IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONNIE L. WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-1316 |
| | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 11th day of September, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 9), filed in the above-captioned matter on February 13, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 7), filed in the above-captioned matter on January 14, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.** **Background**

On February 10, 2012, Connie L. Wallace protectively filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381

1

et seq. Specifically, Plaintiff claimed that she became disabled on January 1, 2009, due to learning disability, asthma, inverted knees, lower back pain, and tremors in legs and hands. (R. 74). Plaintiff later amended her disability onset date to December 7, 2011.

After being denied initially on August 1, 2012, Plaintiff sought, and obtained, a hearing on September 4, 2013, before an Administrative Law Judge ("ALJ"). (R. 28-73). In a decision dated September 17, 2013, the ALJ denied Plaintiff's request for benefits. (R. 11-25). After the Appeals Council denied Plaintiff's request for review on February 12, 2015, Plaintiff appealed to the United States District Court for the Western District of Pennsylvania. (R. 1-5). District Judge Donetta W. Ambrose remanded the case back to the Agency on March 7, 2016. (R. 699-707). In its July 5, 2016 order following the District Court's remand, the Appeals Council vacated the ALJ's order. (R. 696). The Appeals Council noted that Plaintiff had filed subsequent claims for disability insurance benefits under Title II, 42 U.S.C. §§ 401 et seq., and supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381 et seq., and it ordered the ALJ to consolidate the claim files, create a single record, and issue a new decision on the consolidated claims. (R. 696).

In a decision dated June 4, 2018, the ALJ again denied Plaintiff's request for benefits. (R. 650-63). After 60 days, the ALJ's decision became the Commissioner's final decision because Plaintiff did not file written exceptions and the Appeals Council declined to assume jurisdiction. Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the

Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.

1994).  If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience.  See id.  The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled.  See 20 C.F.R. §§ 404.1523, 416.923.

### III.    The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, December 7, 2011.  (R. 653).  The ALJ also found that Plaintiff met the second requirement of the process insofar as she had certain severe impairments, particularly, degenerative joint disease, asthma, tremors, obesity, anxiety and borderline intellectual functioning.  (R. 653).  The ALJ further concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step Three.  (R. 653).

The ALJ next found that Plaintiff retained the RFC to perform sedentary work, except that she can sit for 6 hours in a workday, and stand and walk in combination for no more than 2 hours in a workday; may use a cane or countertop but must be supported while standing still; cannot kneel, crouch, crawl or balance and cannot have concentrated exposure to heat, cold, wetness, humidity or pulmonary irritants; cannot work around hazards and cannot operate foot pedals; can perform no more than occasional fine fingering but has no limitation in handling or gross manipulation; is limited to a routine and repetitive work environment where she works at a

consistent pace performing work that requires no more than a common sense understanding in order to understand and carry out instructions; and must have an opportunity for training for up to 30 days and the work would have little down time other than regularly scheduled breaks. (R. 656). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work, so she moved on to Step Five. (R. 661). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as waxer, sedentary guard, and call out operator. (R. 662). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 662-63).

## IV. Legal Analysis

Plaintiff argues that her RFC is not supported by substantial evidence because the ALJ failed to evaluate properly her limitations in social functioning. More specifically, Plaintiff contends that the ALJ did not provide a full and accurate explanation for her treatment of the opinions of consultative examiner Daniel C. Marston, Ph.D., state agency psychological consultant Phyllis Brentzel, Psy.D., and state agency psychological consultant Arlene Rattan, Ph.D., all of whom found Plaintiff to have moderate social functioning limitations. The Court finds that, because the ALJ did in fact fail to address properly the opinions of these three medical professionals, and further failed to provide an adequate explanation for her decision not to include any social functioning limitations in Plaintiff's RFC, it is not apparent to the Court on what evidence the ALJ relied in formulating the RFC. Because the Court cannot determine whether the RFC is supported by substantial evidence, the Court will remand the case for further consideration.

6

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

All three opinions at issue here include findings that Plaintiff has moderate limitations in social functioning. In her decision, however, the ALJ found Plaintiff to have only mild limitations in interacting with others. (R. 655). Further, the ALJ explicitly stated in her decision that Plaintiff's RFC did not require the inclusion of any limitation on social interaction. (R. 659). Upon review of the record, the Court finds that the ALJ did not adequately explain her treatment of each of these opinions, nor did she provide an adequate explanation for her decision not to include any social functioning limitations in Plaintiff's RFC.

First, after conducting an examination, Dr. Marston found Plaintiff to be moderately limited in her ability to interact appropriately with the public, supervisors, and coworkers. (R. 393). In the ALJ's decision, however, she noted that, although Dr. Marston had found such

7

limitations, the record showed that Plaintiff was able to interact appropriately, and demonstrated no difficulty in dealing with office staff, at her medical appointments. (R. 660-61). The ALJ also appears to have tried to justify her rejection of Dr. Marston's finding of moderate limitations by stating that Plaintiff's actual level of functioning was higher than that estimated in Dr. Marston's consultative examination. (R. 655). The only support the ALJ provided for this statement, however, is a parenthetical citation to (1) a page in Dr. Marston's report (finding her to have moderate limitations in dealing with the public, supervisors and coworkers), (2) a page from a report by another consultative medical examiner that described Plaintiff as being pleasant and cooperative during her examination (and noting the presence of Plaintiff's mother and boyfriend), and (3) "testimony" (without identifying any testimony in particular). (R. 655). Finally, the ALJ implied that she gave some weight to Dr. Marston's opinion—even though she never reconciled the discrepancy between her finding of mild limitations and Dr. Marston's finding of moderate limitations—by stating that the RFC is supported by the objective findings on examination from Dr. Marston. (R. 661).

Upon review, the Court finds that the ALJ did not sufficiently explain why she rejected Dr. Marston's opinion that Plaintiff has moderate limitations in dealing with the public, supervisors and coworkers. The Court notes that Plaintiff's ability to be pleasant and to interact appropriately with staff at her medical appointments is not inconsistent with a finding that she has limitations in dealing with supervisors, coworkers and the public in a work setting. Further, because the ALJ did not justify her choice to reject Dr. Marston's opinion in this regard, she cannot properly claim that the RFC which contained no social limitations, is supported by Dr. Marston's findings without providing additional explanation.

Similarly, Dr. Brentzel opined that Plaintiff has certain moderate social interaction limitations. Specifically, she opined that Plaintiff is moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 398). In the ALJ's decision, however, she explained that she found this limitation regarding coworkers/peers to be at odds with Dr. Brentzel's finding that Plaintiff is able to interact appropriately with the general public. (R. 398, 660). However, the Court notes that there is not necessarily any inconsistency in finding that an individual has limitations in getting along with coworkers and peers, but does not have limitations in interacting with the public. Thus, the Court finds that the ALJ did not provide an adequate explanation as to why she rejected Dr. Brentzel's finding of moderate social interaction limitations.

Lastly, the ALJ claimed to give Dr. Rattan's opinion some weight and noted that Dr. Rattan assessed Plaintiff as having moderate difficulties in maintaining social functioning. (R. 660). The ALJ further stated that Dr. Rattan did not place any specific limitation on interacting with others. (R. 660). Upon review of the record, however, the Court notes that Dr. Rattan clearly found that Plaintiff has moderate social interaction limitations, which include moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, and moderate limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 104, 108-09). As these specific limitations on interacting with others were included in the Dr. Rattan's assessment, it appears that the ALJ may have simply overlooked these particular findings. Because the ALJ did not address these specific limitations found by Dr. Rattan, yet apparently rejected Dr. Rattan's finding of moderate limitations in social functioning, the Court finds that the ALJ's explanation

of the rationale underlying the RFC is lacking in sufficient specificity to allow for judicial review.

Accordingly, because the ALJ did not provide an adequate explanation of her reasons for rejecting the social functioning limitations found in these three opinions, it is not apparent to the Court whether the ALJ's decision in this regard was based on substantial evidence. While the ALJ was certainly not required simply to adopt all of the findings in these opinions, she was required to explain adequately her basis for rejecting them if she chose to do so. See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (explaining that, when conflicting evidence exists, and ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason" (internal citation omitted)); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (stating that an ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects"). Thus, the ALJ's comments concerning the limitations found in the opinions of Dr. Marston, Dr. Brentzel and Dr. Rattan do not allow the Court to determine the basis for her decision to give some weight to those opinions but still reject those particular findings. Remand is therefore required to allow for more focused discussion regarding the ALJ's rationale for rejecting the limitations found by these medical professionals and for finding that social functioning limitations did not need to be included in Plaintiff's RFC assessment.

The Court notes that, since this case was previously remanded by Judge Ambrose for much the same reason that it is being remanded now, the ALJ should ensure that the social functioning limitations are addressed appropriately on remand. Additionally, the ALJ should, of course, ensure that proper weight be accorded to the various other opinions and medical evidence presented in the record, and she should verify that her conclusions at all steps of the sequential evaluation process are adequately explained, in order to eliminate the need for any future

remand. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in fact, be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

V. **Conclusion**

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:       Counsel of record